**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ASIAN AMERICANS ADVANCING** ) | |
| **JUSTICE – LOS ANGELES** ) | |
| 1145 Wilshire Blvd ) | |
| Los Angeles, CA 90017 ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | **Case No._____** |
| v. ) | |
| ) | |
| **UNITED STATES CITIZENSHIP AND** ) | |
| **IMMIGRATION SERVICE.** ) | |
| 20 Massachusetts Ave N.W. ) | |
| Washington, D.C. 20529 ) | |
| ) | |
| *Defendant.* ) | |
| _____ ) | |

**COMPLAINT**

**NATURE OF THE ACTION**

1.     Pursuant to the Freedom of Information Act, 5 U.S.C § 552 ("FOIA"), Asian

Americans Advancing Justice – Los Angeles ("Advancing Justice-LA" or "Plaintiff"), a non-

profit civil rights organization specializing in immigration legal services, files this complaint

against the United States Immigration and Citizenship Service ("USCIS" or "Defendant").

2.     On December 21, 2018, Advancing Justice-LA filed a FOIA Request seeking

from USCIS information about a recent policy shift that dramatically expands the circumstances

under which individuals seeking humanitarian immigration benefits will be placed into Removal

Proceedings.  USCIS failed to respond to the FOIA request within the timeframe mandated by 5

U.S.C. § § 552(a)(6)(A)(i) and (6)(B).  Advancing Justice-LA brings this action to, among other

things, compel compliance with the statute.

3.     In June 2018, USCIS announced new guidance, titled "Updated Guidance for the

Referral of Cases and Issuances of Notices to Appear in Cases Involving Inadmissible and

Deportable Aliens" ("The New NTA Policy")[1].  The New NTA Policy mandates that USCIS

issue notices to appear ("NTAs") to vulnerable individuals seeking temporary humanitarian

relief if their applications for relief are denied.

4.    USCIS's New NTA Policy targets applicants for non-immigrant visas including

victims of human trafficking ("T Visas"), victims of crime who assist law enforcement ("U

Visas"), victims of domestic violence applying for benefits under the Violence Against Women

Act ("VAWA"), and children who entered the United States alone who are eligible for special

immigrant juvenile status ("SIJS").  These visas are available to vulnerable noncitizens as a form

of humanitarian relief.  Non-immigrant humanitarian visas prevent the immediate deportation of

such noncitizens during the time in which charges may be brought against the persons

responsible for their condition.

5.    In 2017, over one million individuals applied for these forms of humanitarian

relief.  The large number of individuals impacted by the New NTA Policy, and the severe

consequences of the policy on those individuals, makes clear on its face the significant public

importance and the public's right to know how the New NTA Policy will be implemented.

6.    Under USCIS's previous policy, which had been in place for 19 years,

unsuccessful applicants for humanitarian relief were not an enforcement priority except in very

limited circumstances, such as the existence of an egregious public safety ("EPS") criminal

case.[2]  Under those narrow circumstances, USCIS would refer potentially removable cases to

---

[1]      (PM-602-0050.1).

[2]      "Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs)
in Cases Involving Inadmissible and Removable Aliens" (Nov. 7, 2011), *available at*

ICE.[3]  Only about one percent of all individuals who sought humanitarian relief were referred to

ICE and eventually placed in Removal Proceedings.  USCIS could exercise its discretion to issue

an NTA to those individuals seeking humanitarian relief under its old policy, but was not

required to do so.[4]

7.     Taken together, these facts created reasonable and settled expectations that the

vast majority of applicants, the overwhelming majority of whom are victims of crimes, would

not be faced with removal to those same countries from which they had fled simply because they

applied for temporary humanitarian benefits.  Because USCIS's new policy discourages

individuals from reporting crimes and seeking life-saving humanitarian immigration relief in the

form of short term legal status and work permits, it creates a chilling effect likely to result in a

significant decrease in the number of individuals who would seek the humanitarian benefits to

which they are entitled.[5]  In this way, USCIS's new policy significantly undercuts and frustrates

---

https://www.aila.org/infonet/uscis-issue-
antna?utm_source=aila.org&utm_medium=InfoNet%20Search.

[3] *See* "Exercising Prosecutorial Discretion" (Nov. 17, 2000) *available* at
https://www.aila.org/infonet/ins-memo-on-
prosecutorialdiscretion?utm_source=aila.org&utm_medium=InfoNet%20Search; "Service
Center Issuance of Notice to Appear (Form I-862)" (Sept. 12, 2003), *available at*
https://www.aila.
org/infonet/uscis-service-center-issuance-
ofntas?utm_source=aila.org&utm_medium=InfoNet%20Search; 1 Policy Memorandum No. 110,
"Disposition of Cases Involving Removable Aliens" (July 11, 2006), *available at*
https://www.aila.org/infonet/uscis-memo-on-issuance-of-ntas; "Revised Guidance for the
Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible
and Removable Aliens" (Nov. 7, 2011), *available at* https://www.aila.org/infonet/uscis-issue-
antna?utm_source=aila.org&utm_medium=InfoNet%20Search.

[4]     *Id.*

[5]     *See* American Immigration Lawyers Association, ALIA Policy Brief: Expanded NTA
Guidance Will Have Devastating Effects on Survivors of Domestic Abuse, Trafficking, and
Other Serious Crime (Nov. 27, 2018), *available at* https://aila.org/infonet/aila-policy-brief-

the very purpose of the relevant statutes,[6] which are drafted in such a way to encourage eligible beneficiaries of humanitarian immigration relief to come forward to seek this relief.

8.     USCIS's prior policy of exercising its authority to initiate removal proceedings in limited circumstances was memorialized in a policy memorandum issued in 2011 titled "Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens"[7] (the "2011 NTA Policy").

9.     Despite the gravity of USCIS's decision to depart so dramatically from its prior policy, it has provided little justification for doing so, causing mass confusion in vulnerable communities.  This is further exacerbated by USCIS's own shifting, inconsistent and contradictory statements regarding the New NTA Policy.  For example, although the New NTA Policy states that USCIS **shall** issue an NTA to all removable aliens following the denial of an immigration benefit, the agency has subsequently discussed the issuance of NTAs under this same policy to be discretionary.[8]

---

expanded-nta-guidance-will-have; Catholic Legal Immigration Network, Inc., Practice Pointers: USCIS Issues New NTA Guidance Memo (July 31, 2018), *available at* https://cliniclegal.org/sites/default/files/clinic_practice-pointer-_on_uscis-new-nta-guidance-memo_0.pdf.

[6]     *See, e.g.*, Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386 (Oct. 28, 2004) (establishing humanitarian relief for trafficking victims because "existing laws often fail to protect victims of trafficking, and because victims are often illegal immigrants in the destination country, they are repeatedly punished more harshly than the traffickers themselves"); Trafficking Victims Protection Act of 2000, Pub. L. 106-386, 146 Cong. Rec. S7781-01, 2000 WL 1079347 (July 27, 2000) (explaining the purpose of the Trafficking Victims Protection Act of 2000 is to prevent the trafficking in persons and to "stop the practice of immediately deporting victims back to potentially dangerous situations by providing them interim immigration relief and the time necessary to bring charges against those responsible for their condition").

[7]     (PM-602-050.1)

[8]     *See* USCIS OFFICE OF PUBLIC AFFAIRS CALL NOTES, *USCIS Teleconference on Notice to Appear (NTA) Updated Policy Guidance* (Nov. 15, 2018), *available at*

10.     Relevant government entities have provided no information to resolve the current inconsistency.  Advancing Justice-LA now seeks such information pursuant to its FOIA request in order to provide clarity and guidance to its client community as to appropriate conduct in light of the New NTA Policy.

11.     Timely public disclosure of the requested information regarding the true import of the New NTA policy is necessary.  The documents Advancing Justice-LA seek relate to a matter of intense public concern, namely USCIS's significant changes to its policy regarding the circumstances under which it will issue NTAs to noncitizens seeking an immigration benefit from USCIS.  These documents are also critical to the work of organizations serving vulnerable individuals seeking humanitarian relief.

12.     Advancing Justice-LA now asks this Court to order Defendant to respond to the request and promptly provide all responsive records improperly withheld.  On January 4, 2019 Defendant acknowledged receipt of Advancing Justice-LA's FOIA request.  USCIS did not, however, provide Advancing Justice-LA with any indication of which of Defendant's documents, records or other data that it would produce, and has failed to provide a single responsive document within the statutory timeframe.

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction over this action pursuant to FOIA, 5 U.S.C. § 552(a)(4)(B).  This Court also has jurisdiction over this action as a federal question under 28 U.S.C. § 1331.

14.     This Court has the authority to grant declaratory relief pursuant to the Declaratory

---

https://www.uscis.gov/sites/default/files/files/nativedocuments/USCIS_Updated_Policy_Guidance_on_Notice_to_Appear_NTA_11.15.18.pdf.

Judgment Act, 28 U.S.C. § 2201 *et seq*.

15.     Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

16.     Plaintiff Advancing Justice-LA is a 501(c)(3) nonprofit legal and civil rights organization.  Advancing Justice-LA combines direct legal services, impact litigation, policy advocacy, leadership development and capacity building to advance civil rights and social justice for the Asian American and Pacific Islander communities, as well as other vulnerable members of society.  Founded in 1983 as the Asian Pacific American Legal Center, Advancing Justice-LA serves more than 15,000 individuals and organizations every year.  In support of its mission, Advancing Justice-LA uses state and federal public records laws to obtain information concerning government activities that may disproportionately impact the communities that it serves.  Because Advancing Justice-LA's legal services include assisting individuals to obtain immigration benefits before USCIS, Advancing Justice-LA has a clear stake in understanding the New NTA Policy, including the policy's inception, implementation and consequences.

17.     Defendant USCIS is a federal agency within DHS that oversees lawful immigration to the United States, and is responsible for conferring immigration benefits such as humanitarian-based visas.  USCIS is headquartered at 20 Massachusetts Ave N.W., Washington, D.C. 20529.  USCIS is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## STATUTORY FRAMEWORK

18.     FOIA governs the disclosure of records held by a federal agency in response to a request for such records by a member of the public.  Pursuant to FOIA, the relevant agency is required to provide the relevant documents unless those records fall within one of the narrow statutory exemptions delineated in the FOIA statute and regulations itself.  *See* 5 U.S.C. §

552(a)(3)(A).

19.     In furtherance of its purpose to ensure government transparency, FOIA imposes
strict deadlines on agencies to provide documents responsive to FOIA requests.  *See* 5 U.S.C. §
552(a)(6)(A).  Specifically, the agency at issue must make a reasonable effort to search for the
requested records.  5 U.S.C. § 552(a)(1)(C).  Additionally, an agency that receives a FOIA
Request is required to determine within 20 business days after receipt of the request whether to
comply with it.  5 U.S.C. § 552(a)(6)(A)(i).

20.     The agency must also immediately notify the requester of the agency's decision as
to whether it will comply with the request, provide the reasons for its determination, and inform
the requesting party of their right to appeal an adverse agency determination.  5 U.S.C. §
552(a)(6)(B)(ii).

21.     The determination as to whether the subject agency will produce documents in the
first instance "must at least inform the requester of the scope of the documents that the agency
will produce, as well as the scope of the documents that the agency plans to withhold under any
FOIA exemptions."  *Citizens for Responsibility & Ethics in Washington v. Fed. Election
Comm'n*, 771 F.3d 180, 186 (D.C. Cir. 2013).

22.     Under FOIA, an agency is entitled to one ten-day extension of time to respond to
a request if it provides written notice to the requester explaining that "unusual circumstances"
exist that warrant additional time.  5 U.S.C.  § 552(a)(6)(B) ("unusual circumstances" is limited
to: (i) to search for requested records from field facilities or other establishments, (ii) to search
for a voluminous amount of separate and distinct records, or (iii) for consultation with another
agency having a substantial interest in the determination of the request).  If the request cannot be
processed within the time limit notwithstanding the 10 day extension, the agency must notify the

requester and may ask the requester to limit the scope of the request or to arrange an alternative timeframe for processing the request. 5 U.S.C. § 552(a)(6)(B)(ii).

23. An agency's failure to comply with FOIA's time limit requirements is deemed an exhaustion of administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

24. A FOIA requester who exhausts administrative remedies may petition the court for injunctive and declaratory relief from the agency's continued withholding of public records. 5 U.S.C. § 552(a)(6)(C)(i); *see Spannaus v. U.S. Dep't. of Justice*, 824 F.2d 52, 55-56 (D.C. Cir. 1987).

25. FOIA also provides that documents shall be furnished without charge or at a reduced charge if disclosure of the information is in the public interest because it "is likely to contribute significantly to public understanding of the operations or activities of the government" and is "not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). Requests for fee waivers are to be "liberally construed in favor of waivers for noncommercial requesters." *Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, 432 F.3d 945, 947 (9th Cir. 2005) (citations omitted).

26. A FOIA requester who has been denied records or a waiver of fees associated with the search and production of records may appeal such denials to the agency. The agency must make a determination on the appeal within twenty business days of receipt of the appeal. 5 U.S.C. § 552(a)(6)(A)(ii).

27. FOIA also requires an agency to produce records on an expedited basis when there is a "compelling need" for expedition. 5 U.S.C. § 552(a)(6)(E)(i). A compelling need is established if a person "primarily engaged in disseminating information" shows an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. §

552(a)(6)(E)(v)(II); *accord* 28 C.F.R. § 16.5(e)(1)(ii) (DOJ regulations); 6 C.F.R. § 5.5(e)(1)(ii)

(DHS regulations).  A FOIA requester may also be entitled to expedited processing on the

grounds that the records sought relate to a "matter of widespread and exceptional media interest

in which there exist possible questions about the government's integrity which affect public

confidence."  28 C.F.R. §16.5(e)(1)(iv) (DOJ regulations).

## FACTUAL BACKGROUND

### Background on Notice to Appear and USCIS's Prior NTA Policy

28.     An NTA is a charging document issued by DHS to initiate Removal Proceedings

against a noncitizen under section 240 of the Immigration and Nationality Act ("<u>INA</u>").  8

U.S.C. § 1229 ("Initiation of Removal Proceedings").  Pursuant to INA § 239(a)(1), an NTA

must contain certain information, including the nature of and legal authority for the Removal

Proceedings, the acts or conduct alleged to be in violation of law, the charges against the

noncitizen, and the statutory provisions alleged to have been violated.  8 U.S.C. § 1229(a)(1).

The INA provides USCIS discretionary authority to issue NTAs.  *See* 8 U.S.C. § 239; 8 CFR §

239.1(a) (stating that an immigration officer "may issue a notice to appear").

29.     Since at least 2011, USCIS has issued NTAs only in very specific situations.  For

example, out of the more than 8 million applications for benefits that it processed in fiscal year

2016, USCIS issued only 92,229 NTAs (representing approximately 1% of all USCIS

applications).  *See* Immigration Enforcement Actions: 2016, Table 4, Department of Homeland

Security (Dec. 2017).  Eighty percent of those 92,229 NTAs were issued in the limited set of

circumstances where the asylum seeker had a statutory right to present his or her case to an

immigration judge after receiving the NTA.[9]  Many, if not most, of the individuals who will receive NTAs under the New NTA Policy will not have such a right.

**Events Leading to New NTA Policy**

30.      On June 28, 2018, USCIS issued the New NTA Policy.  The New NTA Policy supersedes the 2011 NTA Policy with respect to circumstances under which USCIS will issue an NTA against a noncitizen who applies for an immigration benefit.  The stated purpose of the New NTA Policy is to "outline how USCIS's NTA and referral policies serve to implement the Department of Homeland Security's new removal priorities."  Those removal priorities were identified shortly after the inauguration of President Donald Trump in the President's January 25, 2017 Executive Order ("<u>EO 13768</u>")[10] and in then-DHS Secretary John Kelly's February 20, 2017 implementing memorandum (the "<u>DHS Memorandum</u>")[11]. EO 13768 and the DHS Memorandum announced a policy of "faithfully execut[ing] the immigration laws of the United States against **all removable aliens**."  This marks the greatest expansion of the class of noncitizens deemed a "priority" for immigration enforcement in the United States under any policy by all prior administrations.

31.      Among other things, EO 13768 expanded deportation priorities, purported to deputize state and local law enforcement to carry out immigration laws, called for an additional 10,000 ICE officers, and attempted to withhold all federal funding from so-called "sanctuary

---

[9]      *See* AILA Policy Brief: New USCIS Notice to Appear Guidance (July 17, 2018), *available at* <u>https://www.aila.org/File/DownloadEmbeddedFile/76684</u>.

[10]      President Donald Trump, Executive Order 13768: Enhancing Public Safety in the Interior of the United States (Jan. 25, 2017).

[11]      Department of Homeland Security, "Enforcement of the Immigration Laws to Serve the National Interest," (February 20, 2017).

cities" that enact laws or policies that limit communication with DHS about "information regarding the immigration or citizenship status" of individuals.  *See* 8 U.S.C. § 1373 (2017) (prohibiting local and state governments and agencies from enacting laws that limit communication with DHS).

32.     The stated purpose of EO 13768 was to improve "national security and public safety."  8 U.S.C. § 1373.  But EO 13768 fails to state how this purpose would be advanced by placing applicants denied humanitarian immigration benefits into Removal Proceedings.  Courts have struck down portions of EO 13768 as unconstitutional.[12]

33.     The DHS Memorandum implements EO 13768 and mirrors its directives by, among other things, expanding the class of aliens who may be an enforcement priority based on criminal or fraudulent grounds.  The DHS Memorandum also directs department personnel, including USCIS officers, to "initiate Removal Proceedings" against removable aliens such as noncitizens whose only crime is their unlawful presence in the United States.  *See* DHS Memorandum at 4.  Like EO 13768, the DHS Memorandum does not provide any reason for broadening enforcement to noncitizens applying for humanitarian benefits.

### Sweeping Changes in the New NTA Policy

34.     As set forth in examples below, the New NTA Policy departs significantly from the prior 2011 NTA Policy in at least three ways.  Specifically, it includes: (i) a broad mandate that USCIS must issue an NTA where an individual's application, petition or benefit request is denied and he or she is not "lawfully present," (ii) a lowered burden for a finding of fraud by an

---

[12]     *See e.g., San Francisco v. Trump*, 897 F.3d 1225 (9th Cir. 2018) (holding unconstitutional portion of EO 13768 eradicating "sanctuary cities").

immigration officer and (iii) an expansion of the categories of criminal offenses and criminal conduct that may give rise to the issuance of an NTA.

35.     Pursuant to the New NTA Policy, in any circumstance where an individual's application, petition or benefit request is denied by USCIS and he or she is not "lawfully present" in the United States, USCIS is required to issue an NTA.  In other words, if an unlawfully present individual applies to USCIS for any humanitarian benefit and the application is denied, the applicant will be placed in Removal Proceedings.  In contrast, under the 2011 NTA Policy, if an individual's request to USCIS was denied, Removal Proceedings would be initiated only if the person fell within certain removal priority categories involving factors such as public safety or a reasoned and documented finding of fraud.[13]

36.     In the context of fraud-related cases, under the 2011 NTA Policy, a USCIS officer could issue an NTA only upon a statement of findings substantiating the alleged fraud.  But under the New NTA Policy, a significantly lower standard applies.  If a USCIS officer concludes that there is any evidence of fraud, misrepresentation or "abuse of public benefit programs" in the record, USCIS will issue an NTA without a formal statement of findings.  Although USCIS stated that issuance of NTAs for "abuse of public benefit programs" will not be part of the initial policy implementation, the agency reserved its right to begin such issuance at any time in the future.[14]  DHS has not explained how a USCIS officer is to make a determination of the

---

[13]     "Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens" (Nov. 7, 2011), *available at* https://www.aila.org/infonet/uscis-issue-annta?utm_source=aila.org&utm_medium=InfoNet%20Search.

[14]     *See* USCIS OFFICE OF PUBLIC AFFAIRS CALL NOTES, *USCIS Teleconference on Notice to Appear (NTA) Updated Policy Guidance* (Sept. 27, 2018), *available at*

existence of "any evidence of fraud," how this type of information would ever make its way into the record for appeal in the absence of a statement of findings, or what constitutes an abuse of a public benefits program (as opposed to a non-abusive use of a public benefits program).

37.     A third example of the New NTA Policy's marked departure from prior policy is that USCIS "will issue" an NTA in any non-EPS criminal case where the application or petition is denied and the individual is removable.  ICE is the agency within DHS primarily responsible for enforcement of the immigration laws, such as commencing Removal Proceedings against noncitizens.  By contrast, USCIS has been primarily responsible for the conferral of immigration benefits, such as granting applications for humanitarian visas, and did not issue NTAs except in very limited circumstances.  Under the 2011 NTA Policy, USCIS would only refer non-EPS criminal cases to ICE after adjudicating an application, and ICE would then determine whether to issue an NTA.   By mandating that USCIS now broadly issue NTAs non-EPS criminal cases, the New NTA Policy essentially transforms USCIS into another arm of immigration law enforcement.

38.     Equally relevant, the New NTA Policy broadens the definition of a "[n]on-EPS criminal case."  Non-EPS criminal cases previously included only those individuals who either did not qualify for admission or were removable for a criminal offense not included on the EPS list (*i.e.*, convicted of a crime of moral turpitude or a crime related to a controlled substance). Under the New NTA Policy, a non-EPS criminal case exists "where information indicates the alien is under investigation for, has been arrested for (without disposition), or has been convicted of any crime" not otherwise included in the EPS definition.  This is a significant departure from

---

https://www.uscis.gov/sites/default/files/
files/nativedocuments/USCIS_Updated_Policy_Guidance_on_Notice_to_Appear_NTA.pdf.

the description of non-EPS criminal cases in the 2011 NTA Policy.  For instance, USCIS will

now issue an NTA where a removable individual's application is denied and he or she is

convicted of, or arrested without disposition for, a minor offense such as trespassing.

### Implementation of the 2018 NTA Policy

39.     USCIS's haphazard implementation of the New NTA Policy — including its

contradictory positions and confusing statements regarding how, when and to whom the New

NTA Policy applies — underscores the need for Defendant to comply with Plaintiff's FOIA

request.

40.     After issuing the New NTA Policy on June 28, 2018, USCIS announced on July

30, 2018 that it temporarily suspended application of its new policy while USCIS further

developed its implementation.[15]  It is possible, though unclear, that individuals may have been

subject to an NTA under the New NTA Policy before the suspension.

41.     On September 26, 2018, USCIS announced that it would officially begin

implementing the New NTA Policy on October 1, 2018.[16]  This announcement, however, also

stated that the New NTA Policy would "not be implemented with respect to employment-based

petitions and humanitarian applications and petitions at this time."[17]  The announcement stated

"USCIS will continue to prioritize cases of individuals with criminal records, fraud, or national

---

[15]     *See* USCIS PRESS RELEASE, *Updated Guidance on the Implementation of Notice to
Appear Policy Memorandum* (July 30, 2018), https://www.uscis.gov/news/alerts/updated-
guidance-implementation-notice-appear-policy-memorandum.

[16]     *See* USCIS PRESS RELEASE, *USCIS to Begin Implementing New Policy Memorandum
on Notices to Appear* (Sept. 26, 2018), https://www.uscis.gov/news/alerts/uscis-begin-
implementing-new-policy-memorandum-notices-appear.

[17]     *Id.*

security concerns."[18]  The announcement did not advise when the New NTA Policy would be

implemented with respect to employment-based petitions and humanitarian applications and

petitions, nor did USCIS commit to providing notice on when the new policy would be so

implemented.  The lack of clarity about if, how or when such sweeping changes would take place

caused mass confusion among the impacted communities, the organizations that serve them, and

in some instances, law enforcement agencies that rely on a long and well-established

understanding that certain non-citizens such as crime victims who apply for an immigration

benefit before USCIS will not be ensnared in deportation proceedings.[19]

42.     Exacerbating the confusion, in a USCIS stakeholder call on September 27, 2018,

USCIS stated that it had the right to apply the New NTA Policy retroactively to already-

submitted applications.  In response to a stakeholder question, USCIS stated that, "[w]e will use

an incremental approach to implement the memo for denials issued on or after Oct. 1, 2018,

regardless of when the application or petition was filed." [20]  No guidance was provided as to

what "incremental implementation" meant.

---

[18]     *Id.*

[19]     *See* Martin de Bourmont, *New U.S. Policy Raises Risk of Deportation for Immigrant Victims of Trafficking*, Foreign Pol'y Mag., July 9, 2018,
https://foreignpolicy.com/2018/07/09/new-us-policy-raises-risk-of-deportation-for-immigrant-victims-of-trafficking-immigration-visa/?fbclid=IwAR2uyBO3gGgk2nzd038g
FgzYcpdgS-8-ufZJ1C0YFxOstNFYGQVegpyHAw0 (reporting that some law enforcement officials have expressed worry in light of the New NTA Policy's failure to draw a distinction between immigrant crime victims that serve a vital role as potential witnesses and other types of immigrants).

[20]     *See* USCIS OFFICE OF PUBLIC AFFAIRS CALL NOTES, *USCIS Teleconference on Notice to Appear (NTA) Updated Policy Guidance* (Sept. 27, 2018), *available at*
https://www.uscis.gov/sites/default/files/files/
nativedocuments/USCIS_Updated_Policy_Guidance_on_Notice_to_Appear_NTA.pdf.

43.     Less than five weeks later, USCIS stated that starting November 19, 2018, USCIS

may issue NTAs to humanitarian-based visa petitions including for victims of serious crimes,

domestic violence and human trafficking.[21]  USCIS continued to refrain from implementing the

New NTA Policy on employment-based petitions, without explanation.


**Plaintiffs' FOIA Request**

44.     On December 21, 2018, Advancing Justice-LA sent a request (the "Request,"

attached as **Exhibit A**) by mail to Defendant USCIS for records generally grouped into two

categories: (1) documents related to the implementation of the New NTA Policy; and (2) agency

statistics related to the issuance of NTAs from 2012 to the present (or the most current Quarter

for which such statistics are available).

45.     On January 4, 2019, USCIS acknowledged receipt of the Request and invoked the

10-day extension to respond to the Request pursuant to 5 U.S.C. § 552(a)(6)(B).  *See* Letter from

J. Eggleston, Director of FOIA Operations, to D. Cohen, Milbank (Jan. 7, 2019) (attached as

**Exhibit B**).  USCIS placed the Request in Track 2, a non-expedited processing track for

"complex" FOIA requests, and invited Advancing Justice-LA to narrow requests for faster

processing.  *See id*. at 4.  It also denied Advancing Justice-LA's request for expedited

processing.  *Id*.

46.     In response, on January 31, 2019, Plaintiff sent a letter through counsel (attached

as **Exhibit C**) to USCIS identifying a priority set of documents and records they sought relating

---

[21]     *See* USCIS PRESS RELEASE, *USCIS to Continue Implementing New Policy Memorandum on Notices to Appear* (Nov. 8, 2018), https://www.uscis.gov/news/alerts/uscis-continue-implementing-new-policy-memorandum-notices-appear.

directly to USCIS's policies, practices and criteria in implementing and enforcing the New NTA

Policy.  Advancing Justice-LA did so as a good faith effort to cooperate with USCIS so their

Request would obtain faster track processing.

47.     USCIS failed to respond to the Request by the statutory deadline of February 15,

2019.  *See* 5 U.S.C. § 552(a)(6)(A).  As of the filing of this Complaint, Defendant has failed for

more than 30 business days from receipt to notify Plaintiff of whether they will comply with the

Request.

48.     As of the filing of this Complaint, Defendant has failed to produce any responsive

documents.  Defendant has not objected to the request for records, nor provided any basis for

withholding the records sought.

49.     Defendant's failure to provide any substantive responses to the request for records

within the statutory timeframe is a constructive denial of the request.  As such, Plaintiff has

exhausted its administrative remedies.  5 U.S.C. § 552(a)(6)(C)(i).

50.     Plaintiff has a compelling and immediate need for the information requested

because the New NTA Policy has gone into effect with little information from relevant federal

agencies, resulting in the need to immediately access the requested information to understand

and educate the public about the impact of such sweeping changes.

51.     The public has a right to know this information on an expedited basis because of

the severity of the issue of deportation or removal that, by USCIS's own statements, is

retroactively applied to pending applications.  The size of the impacted populations also warrants

disclosure of information on an expedited basis.  In fiscal year 2017, over one million

applications were filed with USCIS related to humanitarian visas alone.[22]  Highlighting the

importance and time-sensitive nature of the Request, on February 14, 2019, the Department of

Justice — another agency to whom Advancing Justice-LA served the instant FOIA Request —

sent a letter (attached as **Exhibit D**) acknowledging the Request and granting their request for

expedited processing.

52.     Given the gravity of the public interests at stake, it is imperative that the Request

be complied with as soon as possible.

## STATEMENT OF CLAIMS

### Count I
### (Failure of USCIS to Respond to Request within Statutory Timeframe in Violation of 5 U.S.C.  § § 552(a)(6)(A)(i) and (6)(B))

53.     Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth in full.

54.     Defendant USCIS has failed to timely respond to Plaintiff's Request within the

statutorily mandated timeframe.

55.     Because USCIS has failed to timely respond to Plaintiff's Request within the

statutorily mandated timeframe, the Court should declare USCIS is in violation of 5 U.S.C. §§

552(a)(6)(A)(i) and (6)(B).

### Count II
### (Failure of USCIS to Reasonably Search For and Produce Responsive Records in Violation of 5 U.S.C. § § 552(a)(1)(C) and (a)(3))

56.     Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth in full.

57.     Defendant USCIS's failure, on information and belief, to reasonably search for

---

[22]     *See* USCIS Number of Service-wide Forms by Fiscal Year To-Date, Quarter and Form Status 2017, available at
https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/Quarterly_All_Forms_FY17Q4.pdf.

and properly identify responsive documents, failure to release a reasonably segregable portion of the withheld responsive documents and failure to produce the records requested by Plaintiff violates 5 U.S.C. §§ 552(a)(1)(C) and (a)(3).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the Court award it the following relief:

A.  Declare that the Defendant's failure to timely respond, search for or disclose records was unlawful;

B.  Order Defendant to conduct adequate searches and promptly produce records available to Plaintiff on a rolling basis;

C.  Order Defendant to produce a *Vaughn* Index and/or a Declaration under oath with facts sufficient to justify the withholding of any responsive information requested based on the valid FOIA exemption or exemptions that Defendant plans to invoke;

D.  Award Plaintiff its costs and reasonable attorney's fees in this action as provided by 5 U.S.C. § 552(a)(4)(E);

E.  Accord expedited treatment to this action; and

F.  Grant such other relief as this Court may deem just and proper.

Dated: February 18, 2019

**MILBANK LLP**


By: /s/ David S. Cohen
David S. Cohen [D.C. Bar # 450107]
Aaron L. Renenger [D.C. Bar # 489481]1850 K Street NW,
Suite 1100
Washington, D.C. 20006
Telephone:  202-835-7500
Email:  dcohen2@milbank.com
          arenenger@milbank.com


By: /s/ Linda Dakin-Grimm
Linda Dakin-Grimm [D.C. Bar # 501954]
2029 Century Park East
33rd Floor
Los Angeles, CA US 90067-3019
Telephone:  424-386-4404
Email:  ldakin-grimm@milbank.com


**ASIAN AMERICANS ADVANCING JUSTICE – LOS
ANGELES**


By: /s/ Laboni Hoq
Laboni Hoq [CA Bar # 224140]
John Trang [CA Bar # 277080]
Christopher Lapinig [CA Bar # 322141]
1145 Wilshire Blvd
Los Angeles, CA 90017
Telephone:  888-349-9695
Email:  lhoq@advancingjustice-la.org
          jtrang@advancingjustice-la.org
          clapinig@advancingjustice-la.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 18, 2019, I caused a copy of the foregoing Complaint to be filed electronically and that these documents are available for viewing and downloading in the ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  I hereby certify that participants in the case will additionally be served by registered U.S. mail.

/s/ David S. Cohen_____

David S. Cohen
